SABRINA ROPPO, individually and on behalf of others similarly situated, )

Plaintiffs, )

v. )

THE TRAVELERS COMPANIES, et al., )

Defendants. )

No. 13 C 05569

Judge Edmond E. Chang

## MEMORANDUM OPINION AND ORDER

In July 2011, Plaintiff Sabrina Roppo was involved in a car accident with Jeffrey Block. Block was insured by Defendant Travelers, holding both a personal automobile insurance policy and an excess umbrella policy.[1] Roppo filed a personal-injury action against Block in state court, and Travelers provided Block with a defense. Roppo alleges that, during the course of the personal-injury suit, Travelers and the lawyers it retained for Block failed to disclose Block's umbrella-insurance policy (this despite the fact that Travelers' logo actually is an umbrella). After learning about the excess insurance coverage, Roppo settled the personal-injury action for an amount in excess of the automobile policy limits. She then brought this suit against Travelers and the lawyers, Defendants Jason Hitchings, Roanne

---

[1]Roppo identifies several companies "that comprise" Travelers. R. 63, Third Am. Compl. ¶ 2. At the time that she filed her third amended complaint, Roppo could not determine which of these entities issued motor vehicle insurance and the excess umbrella policy to Block. *Id.* ¶ 3. Without additional discovery, Roppo cannot determine precisely which Travelers companies are the proper defendants in this case. *Id.* ¶¶ 3-4. For the purposes of the motion to dismiss, the Court will refer to all potential defendants who are affiliated with the Travelers Insurance Company as "Travelers."

Maisel, and Maisel & Associates,[2] alleging several causes of action: fraudulent misrepresentation; negligence; violations of the Illinois Insurance Code, 215 ILCS 5/143.24b, 155; violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq.*; negligent misrepresentation; and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*[3] R. 63, Third Am. Compl. Defendants now move to dismiss or, in the alternative, to strike several paragraphs of Roppo's complaint. R. 68, Mot. Dismiss. For the reasons discussed below, Defendants' motion to dismiss granted.

## I. Background

In evaluating the motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Roppo's favor. *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2079 (2011). In July 2011, Roppo was injured in a traffic accident caused by Jeffrey Block. Third Am. Compl. ¶ 42. Block was insured by Travelers, which issued Block both a personal automobile insurance policy, which had a policy limit of $500,000, and a personal liability umbrella policy, which had a policy limit of $1,000,000. *Id.* ¶¶ 1, 44-46; R. 63-6, Pl.'s Exh. F, Umbrella Policy.

Shortly after the accident, Roppo sent a certified letter to Travelers requesting Block's policy limits "[p]ursuant to 215 ILCS 5/143.24b," which is part of the Illinois Insurance Code. Third Am. Compl. ¶ 43; R. 63-1, Pl.'s Exh. A, Aug. 9,

---

[2]For convenience's sake, Roanne Maisel and Maisel & Associates will be referred to collectively as "Maisel."

[3]Because Roppo brings this suit as a proposed class action, the Court has jurisdiction over Roppo's claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), as explained in detail in a prior opinion. *See* R. 1, Notice of Removal; R. 49, Order Denying Mot. Remand.

2011 Letter. Rachel Grace, a Travelers Claims Representative, responded that Block had $500,000 in coverage. Third Am. Compl. ¶ 44; R. 63-3, Pl.'s Exh. C, Aug. 30, 2011 Letter. Grace also asked Roppo's counsel to provide medical records and a signed medical authorization form. Third Am. Compl. ¶ 44. More than a year later, Roppo filed a personal-injury suit against Block in state court. *Id.* ¶ 45. Travelers provided Block with a defense. *Id.* ¶ 46. Shortly after the state-court suit was filed, Grace called Roppo's counsel to assess the extent of Roppo's injuries. *Id.* ¶ 45. During the phone call, Grace reiterated that there was only $500,000 in coverage. *Id.* Roppo told Grace that a policy demand was forthcoming, and she rejected Travelers's initial settlement offer of $325,000. *Id.*

Jason Hitchings—who worked at Roanne Maisel's law firm, Maisel & Associates—filed an appearance on behalf of Block in the personal-injury lawsuit on January 22, 2013. *Id.* ¶¶ 5, 7, 46. As Block's attorney, Hitchings was responsible for responding to the interrogatories posed by Roppo in the state-court suit. *Id.* ¶¶ 47-48. Roppo asked Block to list all insurance policies, "including umbrella or excess insurance coverage." *Id.* ¶ 47. In response, Hitchings listed only the personal automobile insurance policy. *Id.* ¶¶ 47-48 (identifying the date of the interrogatory responses as April 3, 2013). He did not tell Roppo about the umbrella policy. *Id.* Plaintiff's counsel, who had been "lied to in another case" about a tortfeasor's policy limits, "repeatedly expressed uncertainty" that there was no umbrella policy. *Id.* ¶ 49. Finally, on June 13, 2013, Hitchings revealed to Roppo's counsel that Block had $1,000,000 in umbrella coverage. *Id.* On May 9, 2014, nearly eleven months

after the disclosure of the umbrella coverage, Roppo settled her claims against Block for $750,000. *Id.* ¶ 52.

## II. Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) "require[s] the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). Put differently, the complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (internal quotation marks and citation omitted).

## III. Analysis

### A. Fraudulent and Negligent Misrepresentation (Counts 1-3, 10)

In Counts 1, 2, and 3, Roppo alleges that Travelers, Hitchings, and Maisel fraudulently misrepresented Block's policy limits. Third Am. Compl. at Count 1, ¶¶ 54-72; Count 2, ¶¶ 54-67; Count 3, ¶¶ 54-68. In the alternative, she claims that Travelers negligently misrepresented Block's policy limits. *Id.* at Count 10, ¶¶ 54-73. For all of these claims, Roppo must allege that she took "action … in reliance on the truth of" Defendants' misrepresentations. *See Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980) (fraudulent misrepresentation); *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006) (negligent

misrepresentation). Defendants argue that there are insufficient allegations of reliance and, what's more, because Roppo's attorney "repeatedly expressed uncertainty" about the lack of an umbrella policy, Roppo has affirmatively alleged that she *did not* rely on the misrepresentations.[4] Defs.' Br. at 9-11.

Roppo argues that Defendants' argument would improperly question the merits of her claim at the pleadings stage of the case. Pl.'s Resp. Br. at 8-10. Although Roppo is correct that her factual assertions are entitled to the assumption of truth at this stage, her claim may nevertheless be dismissed if she has pled herself out of court by alleging facts that demonstrate she has no viable claim, *see McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006), or if she fails to allege facts that plausibly suggest reliance, *see Iqbal*, 556 U.S. at 678-79. At the dismissal-motion stage, the question is whether all of Roppo's factual allegations, taken as true, demonstrate that she took "action … in reliance on the truth of the statement." *Soules*, 402 N.E.2d at 601 (fraudulent misrepresentation); *First Midwest Bank*, 843 N.E.2d at 332 (negligent misrepresentation).

Even under the more relaxed Rule 8 standard (which applies to the negligent misrepresentation claim), *see Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (applying Illinois law and holding that a claim for negligent misrepresentation "is *not* governed by the heightened pleading standard of Rule 9(b)"), Roppo has failed to adequately allege reliance. Stripping away Roppo's legal conclusions, which merely state that she "relied upon"

---

[4]Knowledge of an attorney is imputed to the client. *Segal v. Dep't of Ins.*, 938 N.E.2d 192, 196 (Ill. App. Ct. 2010).

Defendants' misrepresentations, *see* Third Am. Compl. at Count 1, ¶ 67; Count 2, ¶ 62; Count 3, ¶ 63, there are no factual allegations in the case that describe what she did (or decided not to do) in reliance on Defendants' misrepresentations. Ultimately, the only actual *factual* allegation concerning Roppo's reliance is her counsel's affirmative statement that he did not believe Defendants' representations that there was no umbrella policy. *Id.* ¶ 49.

Roppo argues that Travelers misrepresented the policy limits before her counsel expressed uncertainty about them.[5] Pl.'s Resp. Br. at 8-9. But Roppo has alleged no facts to suggest that, even before the conversations with her counsel in which he "repeatedly expressed uncertainty," Roppo did something (or decided not to do something) in reliance on Defendants' statements. She did not accept a lower settlement amount than she otherwise would have, *see* Third Am. Compl. ¶ 45, and she has not alleged that she changed her behavior between the time the first representation was made in late 2012 and when the true policy limits were revealed in June 2013. In fact, the facts alleged in the complaint suggest that Roppo (through her lawyer) continued to push Travelers and its employees to disclose more about Block's policy limits. She repeatedly asked the Claims Representative and the insured's attorneys about the policy limits, despite their continued representation that coverage was only $500,000. *Id.* ¶¶ 45, 47-49. Roppo has not alleged reliance under the ordinary pleading standard of Rule 8, and she certainly has not satisfied

---

[5]As discussed below, Rachel Grace's August 30, 2011 letter to Roppo's counsel did not misrepresent the policy limits that Travelers was required to disclose under 215 ILCS 5/143.24b. The first potentially actionable representation, then, is the phone call with Grace sometime between December 2012 and January 2013. Third Am. Compl. ¶ 45.

the heightened pleading standard of Rule 9(b), which requires that her claims for fraudulent misrepresentation be pled with particularity. Fed. R. Civ. P. 9(b). Roppo is now on her third amended complaint in this action. She has had *four* opportunities to adequately plead her fraudulent misrepresentation claims, and has failed to do so. *See* R. 1-2, Compl. (alleging fraudulent misrepresentation). Accordingly, Roppo's fraudulent misrepresentation claims are dismissed with prejudice.

For practical reasons (in case the parties want to talk settlement) and for the sake of completeness (in case there is an appeal), it is worth discussing Travelers' attack on the damages alleged in the complaint. On this issue, the Court concludes that even if Roppo had adequately alleged reliance, her damages would be extremely limited. In each of her claims, Roppo alleges that she suffered several injuries: (1) emotional distress; (2) aggravation and inconvenience; (3) delay in settlement; (4) changes in the duration, course, and scope of litigation; (5) change of resources that she and her counsel applied to the case; (6) commitment of scarce judicial resources. *See, e.g.,* Third Am. Compl. at Count 1, ¶ 71. Defendants' argue that none of these alleged damages are cognizable as a matter of law.[6] Defs.' Br. at 5-9. For many categories of Roppo's claimed damages, Defendants are correct.

---

[6]In her complaint, Roppo invokes the "mend to hold" doctrine—a traditional contract-law concept—to argue that Defendants cannot now say that Roppo has not suffered damages because they previously argued that the amount in controversy exceeded CAFA's $5 million amount-in-controversy requirement. *See, e.g.,* Third Am. Compl. at Count 1, ¶ 72. Defendants raised this issue in their motion to dismiss, arguing that the doctrine does not apply. Defs.' Br. at 8-9. Roppo did not address the issue in response. *See generally* Pl.'s Resp. Br.. "Failure to respond to an argument results in waiver." *Bonte v.*

As a preliminary matter, Roppo can only recover for injuries that she herself suffered. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996) (stating that fraudulent representation requires allegations that *plaintiff* suffered damages); *First Midwest Bank*, 843 N.E.2d at 332 (same for negligent misrepresentation). She therefore cannot recover based on claims of damage to the judiciary or to her attorneys. For her fraudulent-concealment claims, Roppo has also failed to adequately allege how the delayed disclosure of the umbrella policy altered the way in which *she* applied resources to the case for. Apart from conclusory or general allegations, she has not alleged any facts that support her claim of damages, which she must plead with particularity, Fed. R. Civ. P. 9(b), and even under the more forgiving Rule 8 standard, does not make an allegation beyond a bare conclusion. She has not said she paid more in fees, said on what she spent more time, or otherwise alleged how she expended any additional resources *herself* as a result of the failure to disclose the policy limits.

Nor can Roppo's claims for emotional distress or "aggravation and inconvenience" survive. In Illinois, emotional distress damages are only cognizable "where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Doe v. Northwestern Univ.*, 682 N.E.2d 145, 150 (Ill. App. Ct. 1997) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)) (applying the standard to fraud claims, among others). There are simply  no factual allegations in Roppo's complaint that suggest that Defendants' failure to disclose the umbrella policy

---

*U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The Court, therefore, does not need to address the mend-the-hold doctrine's dubious applicability to this case.

caused her distress so severe that *no reasonable person* could be expected to endure it. She cannot recover based on emotional distress or aggravation.

The only possibly viable damages claims are the actual, pecuniary damages that Roppo allegedly suffered due to the delay in disclosing Block's actual policy limits. To understand the potential length of the delay, it is necessary to figure out the earliest possible date it could be said that Travelers misrepresented the policy limits. One possible start date is August 30, 2011, the date of the letter sent by Rachel Grace in response to a request by Roppo's lawyers under the Illinois Insurance Code. But, as fully discussed in addressing Count Six below, the response letter did not amount to a misrepresentation under § 143.24b of the Illinois Insurance Code. The first misrepresentation therefore occurred sometime between December 2012 and January 2013, when Grace told Roppo's counsel over the phone that the policy limit was only $500,000. Third Am. Compl. ¶ 45. The true policy limits were revealed roughly six months later, in June 2013. *Id.* ¶ 49. Nearly a year after the umbrella coverage was revealed, Roppo settled her case for an amount in excess of the automobile insurance policy limits. *Id.* ¶ 52.

Given these factual allegations, the damages that Roppo suffered (if any) must have occurred during the six-month period between the first misrepresentation and the revelation of the true policy limits. Roppo claims that had she had known about the umbrella policy, she would have settled the case for $750,000 earlier than she did. Pl.'s Resp. Br. at 12. If she had, the settlement amount would have been earning interest for her earlier. *Id.* at 12-13 (citing *Merritt*

*v. State Farm Mut. Auto. Ins. Co.*, 544 S.E.2d 180, 185 (Ga. Ct. App. 2000)). Although it took another eleven months after the policy limits were revealed to settle Roppo's claim, it is plausible that the six-month delay in disclosing the limits resulted in a concomitant six-month delay in settlement. So *if* Roppo had adequately alleged fraudulent and negligent representation, then Roppo could have recovered for the time-value of money for a six-month period—but that is all. In any event, as discussed above, the complaint inadequately alleges reliance, so the misrepresentation claims are dismissed.

## B. Negligence (Counts 4-5)

Roppo also alleges that Hitchings and Maisel were negligent when they failed to provide complete answers to Roppo's interrogatories. Third Am. Compl. at Count 4, ¶¶ 54-63; Count 5, ¶¶ 54-61. In order to state a claim for negligence under Illinois law, Roppo must allege "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach." *Pelham v. Griesheimer*, 440 N.E.2d 96, 98 (Ill. 1982). Defendants argue that Roppo has failed to allege that either Hitchings or Maisel owed her a duty of care. Defs.' Br. at 11-12. The Court agrees.

In Illinois, the "traditional, general rule has been that the obligation of the attorney is to his client and not to a third party."[7] *Pelham*, 440 N.E.2d at 99

---

[7]In one sentence, Roppo argues that "circumstances alleging fraud can provide an exception to the general rule." Pl.'s Resp. Br. at 16 (citing *Bloomer Amusement Co. v. Eskenazi*, 394 N.E.2d 16, 18 (Ill. App. Ct. 1979)). She does not explain when or how such circumstances "can provide" the exception, nor do the cited cases illuminate how this exception would apply. *Bloomer*, 394 N.E.2d at 18 (stating that no allegations of fraud were made by the plaintiff); *National Savings Bank v. Ward*, 100 U.S. 195, 199 (1879) ("Neither

(internal quotation marks and citation omitted). More recently, however, Illinois courts have expanded the duty of care owed by attorneys to include "third-party intended beneficiaries of the relationship between the client and the attorney." *Id.* To determine if a nonclient is an intended beneficiary, "[t]he key consideration is the attorney's acting at the direction of or on behalf of the client to benefit or influence a third party." *Id.* at 100. This is a "narrow exception" to the traditional attorney-client requirement. *Kopka v. Kamensky & Rubenstein*, 821 N.E.3d 719, 723 (Ill. App. Ct. 2004). Illinois courts limit attorney liability to third-party intended beneficiaries in order to protect the nature of the attorney-client relationship: "Since an attorney must represent his client with zeal and undivided loyalty in adversarial matters, he cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability." *Schechter v. Blank*, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993) (internal quotation marks and citation omitted).

So as a non-client, Roppo must allege facts that would suggest that "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Pelham*, 440 N.E.2d at 100; *accord In re Estate of Powell*, 12 N.E.3d 14, 20 (Ill. 2014) (labelling this the "intent to directly benefit test"). Where, as here "a client's interest is involved in a proceeding that is adversarial in nature, … there must be a *clear indication* that the representation by the attorney is intended to directly confer a benefit upon the third party." *Pelham*,

---

fraud nor collusion is alleged or proved."). This one-sentence argument is thus undeveloped, and undeveloped arguments are waived. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

440 N.E.2d at 100 (emphasis added). Illinois courts have typically required that nonclients be truly direct beneficiaries of an attorney-client relationship, not merely incidental beneficiaries. *Compare Ogle v. Fuiten*, 466 N.E.2d 224, 227 (Ill. 1984) (holding that an attorney who prepared a will owed a duty of care the will's intended beneficiaries), *with Pelham*, 417 N.E.2d at 886-87 (holding that an attorney did not owe a duty to the minor children of his client in a divorce case who were harmed by his negligence). Here, Roppo alleges that Hitchings represented Block *against* her in a personal-injury lawsuit. Third Am. Compl. ¶ 48. The adversarial nature of the relationship is the opposite of saying that *a* purpose, let alone the *sole* purpose*,* of this relationship was to directly confer a benefit on Hitchings' client's adversary. Although Roppo certainly benefits from Hitchings's responsibility to provide true and accurate discovery responses, Hitchings's primary duty was to protect the interests of his client. Expanding an attorney's duty of care to adversaries on the basis of discovery violations would swallow the "narrow" intent-to-directly-benefit exception. *See Kopka*, 820 N.E.2d at 723. Moreover, imposing a duty to adversaries for discovery obligations would undermine the attorney-client relationship. *See Schechter*, 627 N.E.2d at 109 ("Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect."). Because the allegations do not amount to a clear statement that the sole purpose of Hitchings's attorney-client relationship with Block was to benefit

Roppo, she cannot establish that Hitchings owed her a duty of care. Accordingly, her negligence claim against Hitchings is dismissed.

Roppo also brings a negligence claim against Maisel, alleging that she failed to train and supervise Hitchings in providing truthful answers to discovery requests. Third Am. Compl. at Count 5, ¶¶ 54-61. In a claim for failure to train or supervise, the plaintiff must "prove that the employer's breach—not simply the employee's malfeasance—was a proximate cause of the plaintiff's injury." *Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010). So, for this claim to survive, Roppo must adequately allege that Maisel, as the employer of Hitchings, owed her an *independent* duty of care. *Id.* Although liability for failure to train is direct rather than vicarious, on the allegations in this complaint, Hitchings's employer did not owe a duty of care to an adversary in litigation where Hitchings does not.[8] Like Hitchings, Maisel was retained to represent Block, not Roppo. Roppo does not allege any facts to suggest that her relationship with Maisel was any different than her relationship with Hitchings; she simply alleges that Maisel, "by and through their attorney Jason Hitchings, filed an appearance on behalf of Jeffrey Block."[9] Third Am. Compl. ¶ 46. Therefore, Roppo must allege that the primary purpose of the Maisel-Block relationship was to confer a benefit upon her. *See Pelham*, 440 N.E.2d

---

[8]It is true that the employee need not be found liable in tort to support a claim of direct liability against an employer, but there must be "some type of malfeasance, wrongdoing, or negligence on the part of the employee that results from the negligent hiring, training, or supervision." *See Nat'l R.R. Passenger Corp. v. Terracon Consultants, Inc.*, 13 N.E.3d 834, 840 (Ill. App. Ct. 2014).

[9]The Court does not need to accept as true Roppo's bare legal conclusion that Maisel owed a duty to Roppo. *See* Third Am. Compl. at Count 5, ¶¶ 55-57; *Iqbal*, 556 U.S. at 678-79 ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation."). Only *facts* alleged by Roppo are entitled to the assumption of truth.

at 100; *see also Vancura*, 939 N.E.2d at 347 (holding that an employer's duty to train or supervise "is best analyzed under principles generally applicable to negligence cases"). For the same reasons discussed above, she has not done so. Because Roppo has not sufficiently alleged facts showing that Maisel owed her a duty of care, her negligence claim against Maisel is dismissed.

### C. Violation of 215 ILCS 5/143.24b (Count 6)

Under certain circumstances, the Illinois Insurance Code requires an insurer to disclose the policy limits of its insured to someone making a claim against the insured's policy. *See* 215 ILCS 5/143.24b. When the insured is involved in a "vehicular accident," the insurance company must "disclose the dollar amount of liability coverage under the insured's personal private passenger automobile liability insurance policy" when the claimant requests it. *Id.* To make a request for the policy limits, a claimant (or her representative) must provide the insurer with "(a) a certified letter … which requests such disclosure and (b) a brief description of the nature and extent of the injuries, accompanied by a statement of the amount of medical bills incurred to date and copies of medical records." *Id.* Roppo alleges that Travelers violated this provision of the Insurance Code when it did not disclose the umbrella policy in response to her certified letter. Third Am. Compl. at Count 6, ¶¶ 54-67.

Travelers argues that this claim must be dismissed because there is no private cause of action under § 143.24b of the Insurance Code. The statute does not expressly provide for private suits, but Roppo argues that there is an implied

private right of action. Pl.'s Resp. Br. at 20; Third Am. Compl. at Count 6, ¶¶ 54-67. Illinois courts look to four factors to determine if an implied private right of action is appropriate: (1) if "the Plaintiff is a member of the class for whose benefit the statute was enacted"; (2) if "the Plaintiff's injury is one the statute was designed to prevent"; (3) if "a private right of action is consistent with the underlying purpose of the statute"; and (4) if "implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Metzger v. DaRosa*, 805 N.E.2d 1165, 1168 (Ill. 2004) (quoting *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (Ill. 1999)). No Illinois court has yet considered whether § 143.24b supplies a private right of action. It is not necessary (thankfully, in light of the absence of Illinois case law on this issue) for this Court to determine if there is a private right of action under the statute because, based on the language of the statute and the allegations of the complaint, Travelers did not violate the § 143.24b anyway. Roppo's claim must therefore be dismissed.

A claimant must provide two things to trigger the disclosure in § 143.24b: "(a) a certified letter … which requests [a] disclosure [of the insured's personal private passenger automobile liability insurance policy] and (b) a brief description of the nature and extent of the injuries, accompanied by a statement of the amount of medical bills incurred to date and copies of medical records." 215 ILCS 5/143.24b. Roppo's attorney sent the required certified letter to Travelers on August 9, 2011. Third Am. Compl. ¶ 43; Pl.'s Exh. A, Aug. 9, 2011 Letter (asking for Block's policy limits "[p]ursuant to 215 ILCS 5/143.24(b)"). But the letter did not include any

description of the injuries or medical records, and Roppo concedes that she did not supply Travelers with that information. *Id.*; Pl.'s Resp. Br. at 18 ("In the instant case, Plaintiffs' attorney sent a letter by certified mail as required by the statute but did not include medical information."). Roppo therefore did not comply with the provisions of § 143.24b that would entitle her to disclosure.

Roppo argues that Travelers has waived the right to assert this argument. *Id.* Implied waiver "arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004). "[T]he evidence must show a clear, unequivocal[,] and decisive act of a party demonstrating an intent to waive the known right." *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 651 (7th Cir. 2014) (internal quotation marks and citations omitted). The parties agree that Roppo did not provide any of the required medical information. Pl.'s Resp. Br. at 18; Defs.' Br. at 13-14. They also agree about the substance of Traveler's response to Roppo's request. *See* Pl.'s Exh. C, Aug. 30, 2011 Letter. The question, then, is whether, drawing all reasonable inferences in Roppo's favor, the agreed facts can plausibly support an inference of waiver. They cannot.

In its response to Roppo's August 9th letter, Rachel Grace, the Travelers Claims Representative, acknowledged the lack of medical records: "While we realize that medical specials and narratives are not available now, we are in need of information so that our file will reflect the accurate injury and medical information for this claim." Pl.'s Exh. C, Aug. 30, 2011 Letter. Roppo argues that, because Grace

acknowledged the lack of medical information in the letter and provided the policy information anyway, they cannot now argue that Roppo did not comply with the statute. But Grace's acknowledgment of the missing medical records is not "inconsistent with any intention other than to waive" Travelers's right to receive the medical information. *Home Ins. Co.*, 821 N.E.2d at 282. Quite the contrary: Grace asked Roppo to provide the required medical records as soon as possible. Pl.'s Exh. C. Aug. 30, 2011 Letter. This shows an intent to assert Travelers's statutory rights, not to waive them. *See Anderson*, 759 F.3d at 651-52 (holding that a defendant did not waive its right to assert a statute-of-repose defense by offering settlement to the plaintiff). Because the factual matter in Roppo's complaint does not support the inference that Travelers took "a clear, unequivocal[,] and decisive act ... demonstrating an intent to waive" their statutory rights, Travelers has not waived the argument that Roppo failed to comply with § 143.24b.

Even if Roppo had provided the required medical information, she still would have no claim under § 143.24b because Travelers complied with the statute. Under § 143.24b, the insurance company must provide the "amount of liability coverage under the insured's personal private *passenger automobile liability* insurance policy" upon the claimant's request. 215 ILCS 5/143.24b (emphasis added). Under Illinois law, a personal private automobile insurance policy is distinct from an umbrella insurance policy. Umbrella coverage "is generally designed to protect the insured from a judgment against him in an amount greater than that provided for in the underlying policies." *Hartbarger v. Country Mut. Ins. Co.*, 437 N.E.2d 691,

18

693 (Ill. App. Ct. 1982). In that way, "an umbrella liability policy is entirely different from an automobile policy." *Id.* at 694. The Insurance Code embraces this distinction, defining a "[p]olicy of automobile insurance" as separate from "other policies of personal lines" of liability insurance. 215 ILCS 5/143.13. These two types of insurance are distinct, and based on the plain language of § 143.24b, Travelers was only required to disclose the policy limits of the personal liability insurance policy.[10] That is precisely what Travelers provided. *See* Pl.'s Exh. C, Aug. 30, 2011 Letter (providing the policy limits of Block's automobile insurance policy but omitting any mention of his umbrella liability policy). Because Travelers did not violate § 143.24b, Roppo cannot state a claim under that provision.

Roppo argues against this interpretation of § 143.24b, pointing to the title of the statute. She says that the provision is entitled "Disclosure of liability coverage; confidentiality," which demonstrates the legislature's intent to require prompt disclosure of all liability coverage. Pl.'s Br. at 18-19. Although the title of a statute can shed light on legislative intent, Roppo fails to quote the entire title of § 143.24b. The provision is actually entitled "Disclosure of dollar amount of *automobile* liability coverage." 215 ILCS 5/143.24b (emphasis added). The statute's actual title reinforces the conclusion that the specific reference to "automobile liability insurance" refers to just that—automobile liability insurance. It does not include umbrella policies, which are "entirely different from [ ] automobile polic[ies]."

---

[10]Perhaps, as Roppo implies, the provision *should* be amended to require disclosure of excess lines of personal insurance, but that is not for this Court to decide. *See Gibbs v. Madison Cnty. Sheriff's Dept.*, 760 N.E.2d 1049, 1051 (Ill. App. Ct. 2001) ("When the language of a statute is clear and unambiguous, a court should not depart from the plain language of the statute.").

*Hartbarger*, 437 N.E.2d at 694. Travelers therefore complied with the statute, and Roppo's claim under § 143.24b is dismissed.

## D. Illinois Consumer Fraud Act (Counts 7-8)

In Counts 7 and 8 of her complaint, Roppo brings claims against Travelers and Maisel under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). The ICFA prohibits "unfair or deceptive acts or practices, including … fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" in the "conduct of any trade or commerce." 815 ILCS 505/2. Ordinarily, a plaintiff must allege that she is a "consumer" to state a claim under the ICFA. *See Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2003); *see also* 815 ILCS 505/1(e) (defining "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"). Some courts, however, have allowed non-consumers to bring ICFA claims if they can satisfy the "consumer nexus test." *See Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 698 N.E.2d 257, 268 (Ill. App. Ct. 1998). This test requires plaintiffs to show "(1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations … concerned consumers other than [plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Id.* at 269. Put another way, a non-consumer plaintiff must allege "conduct [that]

involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkwagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill App. Ct. 1989).

Defendants argue that Roppo's allegations do not state a claim via the consumer-nexus test. Defs.' Br. at 18-19. The Court agrees. Roppo argues that fractional disclosure has a "damaging effect," but she fails to articulate how this damaging effect harms consumers (like Block), is addressed to the market generally, or otherwise implicates consumer protection concerns. Pl.'s Resp. Br. at 20. Roppo makes no allegations that Travelers or their lawyers were misrepresenting policy limits to their insured. She does not allege that Defendants' misrepresentation of policy limits somehow caused Travelers's insured to pay higher premiums or suffer any other negative consequences. And she does not suggest how her requested relief would help consumers. Roppo provides no factual matter that would support an inference that Defendants' conduct—though deceitful—affects consumers in any way. *Cf. Bank One Milwaukee*, 783 N.E.2d at 222 (holding that there was a consumer nexus when the plaintiff alleged that "a merchant bound her to a commercial transaction through a fraudulent act"); *Downers Grove*, 546 N.E.2d at 41 (holding that a consumer nexus was established where "defendant published false information about its prices for services"). Because she has not alleged the required consumer nexus, Roppo's ICFA claims are dismissed.

Moreover, to state a claim under the ICFA, Roppo must allege both that she relied on the Defendants' deception and that she suffered actual damages. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005); *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) ("[D]eceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff."). ICFA claims are evaluated under the heightened pleading standard of Rule 9. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). As discussed above, Roppo has not sufficiently alleged reliance on Defendants' alleged misrepresentations.[11]

## E. Violation of 215 ILCS 5/155 (Count 9)

Roppo alleges that Travelers violated the Illinois Insurance Code when it vexatiously and unreasonably delayed settling her claim. Third Am. Compl. at Count 9, ¶¶ 53-56 (citing 215 ILCS 5/155). Travelers argues that Roppo cannot sustain a claim under § 155 of the Insurance Code because penalties under that section are only available to the insured.[12] Travelers is correct. "As a general rule, the remedy embodied in section 155 of the Insurance Code extends only to the party insured." *Yassin v. Certified Grocers of Illinois, Inc.*, 551 N.E.2d 1319, 1322 (Ill.

---

[11]And, even if she had alleged reliance, the only possible damages that she could recover are for the delay of six months between the deception and when the umbrella policy was revealed.

[12]Travelers also argues that Roppo cannot state a claim under § 154.6 of the Insurance Code. Defs.' Br. at 19-20. Roppo does cite to § 154.6 in the body of Count 9, but she only references that provision to support her allegations that Travelers's behavior was unreasonable under Section 155. *See* Third Am. Compl. at Count 9, ¶ 54; Pl.'s Resp. Br. at 23 (stating that she is not seeking relief under Section 154.6). In any event, Roppo could not bring a claim under Section 154.6, as there is no private cause of action under that provision. *See Am. Serv. Ins. Co. v. Passarelli*, 752 N.E.2d 635, 638 (Ill. App. Ct. 2001).

1990). "Therefore, the remedy embodied in section 155 of the Insurance Code does not extend to third parties." *Id.* The only exception is for assignees of the insured who succeed to the insured's position. *Statewide Ins. Co. v. Houston Gen. Ins. Co.*, 920 N.E.2d 611, 625 (Ill. App. Ct. 2009); *Garcia v. Lovellette*, 639 N.E.2d 935, 937 (Ill. App. Ct. 1994) ("A section 155 claim for an insurer's vexatious delay is intended for the protection of the insured party, or an assignee who succeeds to the same position of the insured, but is not intended for 'true' third parties."). Roppo has not alleged (nor could she) that she is an assignee of Block. She cannot, therefore, bring a claim against Travelers under § 155.

For her part, Roppo argues that *Yassin* is wrongly decided. Pl.'s Resp. Br. at 23-25 (arguing that "the *Yassin* Court failed to recognize … that the legislative language is broader than the cases have interpreted it" and that, in *Yassin*, "[a]ctual analysis of the issue is just not there"). Even if she is right, a federal court sitting in diversity "must attempt to decide the case as the highest court of the state supplying the law would do." *Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1221 (7th Cir. 1993); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (applying this principle when federal jurisdiction was premised on CAFA). Here, the Court need not guess how the highest court of Illinois would have resolved this issue, because it has already done so. *See Yassin*, 551 N.E.2d at 1322. Because the Supreme Court of Illinois has expressly held that a third party to an insurance policy cannot bring a claim under § 155, Count 9 is dismissed.

## F. RICO (Count 11)

In her final claim, Roppo alleges that Travelers violated RICO by misrepresenting Block's policy limits. Third Am. Compl. at Count 11, ¶¶ 54-61. To state a claim under RICO, Roppo must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). Travelers argues that Roppo has failed to plead the existence of a RICO enterprise or the necessary predicate acts of racketeering activity. Defs.' Br. at 23-25.[13] Roppo concedes that she has not adequately pled these elements, and she seeks to "replead the Count to amend [those] deficiencies." Pl.'s Resp. Br. at 27 ("Travelers' other challenges to Count XI are acknowledged.").

Although the Court would ordinarily require Roppo to make a proper motion for leave to amend before deciding this issue, it would be a waste of time to do so here because an amendment would not be allowed. The RICO claim is premised on the alleged fraudulent misrepresentations, which were not pled with sufficient particularity. As discussed above, Roppo has had ample opportunity to properly plead these claims—this is her third amended complaint. She has not done so, and those claims have been dismissed with prejudice. Because she also failed to properly plead the fraud claims as predicate acts under RICO, her RICO claim is also dismissed with prejudice. Leave to amend the complaint is denied.

---

[13]Travelers also argues that Roppo has not established RICO standing because she has failed to plead injury to her business or property. Defs.' Br. at 22. Roppo responds that she has alleged the necessary injury. Pl.'s Resp. Br. at 27. Given the Court's decision on the motion for leave to amend embedded in Roppo's response brief, however, it is not necessary for the Court to decide whether Roppo has properly alleged a RICO injury.

## IV. Conclusion

For the reasons discussed above, Defendants' motion to dismiss is granted.

Roppo's claims are dismissed with prejudice.

ENTERED:

                                        s/Edmond E. Chang
                                        Honorable Edmond E. Chang
                                        United States District Judge

DATE: April 16, 2015